David L. Johnson (DJ-7079)
Douglas C. Gray (DG-3907)
**MORRIS, DOWNING & SHERRED, LLP**
One Main Street  P.O. Box 67
Newton, New Jersey 07860
Ph. 973-383-2700
Fax 973-393-3510

Attorneys for Plaintiff



JUDGE SCHEINDLIN

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASCENT MEDICAL TECHNOLOGY FUND II, LP, <br><br> Plaintiff, <br><br> v. <br><br> TELEFLEX MEDICAL INCORPORATED, <br><br> Defendant. | Case No. 07 CIV 6353 <br><br> COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff Ascent Medical Technology Fund II, LP ("Ascent"), by its attorneys, Morris, Downing & Sherred, LLP, for its complaint, alleges:

## The Parties, Jurisdiction and Venue

1. Ascent is a Delaware limited partnership with its principal place of business in New York, New York. Ascent is in the business of making privately negotiated investments, principally in early stage growth companies within the medical device industry. Ascent's focus is on harnessing business opportunities available in the Middle East, either through investments in United States companies investing in Middle Eastern joint ventures or subsidiaries or through direct business investments in the region.

2. Upon information and belief, Defendant Teleflex Medical Incorporated ("Teleflex Medical") is a California corporation with its principal place of business in Limerick, Pennsylvania. Teleflex Medical is a global supplier of medical devices, surgical instruments, and disposable medical products.

3. Teleflex Medical's parent company, Teleflex Incorporated, is a global company, registered in Delaware and headquartered in Limerick, Pennsylvania, specializing in the design and manufacture of specialty-engineered products.

4. The amount in controversy hereunder exceeds $75,000, exclusive of interest and costs.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1).

6. Upon information and belief, Teleflex regularly transacts business within the State of New York and contracts to supply goods or services in the State, and in particular, in Manhattan.

7. Upon information and belief, Teleflex Medical regularly does and solicits business and derives substantial revenue from goods used or consumed and services rendered in the State of New York and, in particular, in Manhattan.

8. Upon information and belief, Teleflex Medical is subject to personal jurisdiction in the State of New York and this district pursuant to CPLR 302(a)(1) & (3).

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(1) & (c).

**Teleflex Medical's Solicitation of Offers for Its Medical Guidewire Business**

10.  Medical guidewires are thin, usually flexible devices that can be inserted into narrow spaces, often blood vessels, to act as a guide for the subsequent insertion of stiffer or bulkier instruments.

11.  In or around January 2007, Ascent became aware of Teleflex Medical's intent to pursue divestiture of its medical guidewire manufacturing business located in Tecate, Mexico.

12.  Through an intermediary, Al Emola, Ascent's consultant, contacted Ciaran Hood, Teleflex Medical's technical manager and former head of Teleflex's medical guidewire operations in Ireland and indicated Ascent's interest in purchasing Teleflex Medical's guidewire business for use in establishing a guidewire manufacturing joint venture in Oman.

13.  On or about February 5, 2007, Mr. Hood contacted Mr. Emola to discuss a potential sale of Teleflex Medical's medical guidewire business to Ascent. Messrs. Hood and Emola agreed to meet in Minneapolis to discuss the matter in more depth.

14.  On March 13, 2007, Messrs. Hood and Emola met in Minneapolis to conduct initial due diligence for the transaction and for purposes of planning a trip by Ascent's senior management to Tecate to view Teleflex Medical's medical guidewire business operations first-hand.

15.  On or about April 11, 2007, Mr. Emola; Ms. Peggy Farley and Dr. Karl Groth, principals in Ascent's general partner, Ascent Private Equity II, LLC; and Mr. Hood, among others, visited and conducted a tour of Teleflex Medical's facility in

Tecate, Mexico for purposes of further investigating a sale to Ascent of Teleflex Medical's medical guidewire business.

16. On or about April 24, 2007, Teleflex Medical distributed to Ascent, and upon information and belief, to a number of other companies already in the medical guidewire business, a document requesting bids for the Tecate business. Among other things, this request for bids stated:

> Visits to our Tecate facility to view the Guidewire equipment have now been completed and we are in the process of preparing some of the equipment for sale and transportation .
>
> The Guidewire production within Teleflex will cease on June 29th 2007. In preparation for this date we would like to conclude the bidding process soon. Teleflex will accept offers through Sat May 12th. During week beginning May 14th we will review our position and update all interested parties.

**The Parties' Agreement**

17. In response to Teleflex Medical's request for bids, on May 1, 2007, Ascent submitted its proposed terms for the purchase of Teleflex Medical's guidewire business. It stated, in pertinent part:

> We are very pleased to let you know that the Ascent Medical Technology Fund II, LP, wishes to purchase all of the guide wire manufacturing equipment now located in Tecate, Mexico at the Teleflex Medical facility and in storage. Along with the equipment, we wish to have the 510K and technical files, detailed process instructions as well as the support necessary to maintaining the in-house Teleflex accounts. In addition, we would like to have the facility move plan that was used for the transfer of manufacturing from Ireland to Tecate. Finally, we would wish to have the ability to revisit the facility and observe operations before the closing of the production lines as well as have access to technical support (4-8 hours per month) for the first six months of operations.

> Our offer for the equipment and related files is $400,000, of which $50,000 would be paid upon acceptance of this offer and the remainder paid at the time the equipment is shipped to the destination in which we will be establishing operations. We contemplate shipment to occur on or as soon after July 1, 2007, as is mutually convenient.
>
> We hope that the above would be acceptable to you and to Teleflex and will look forward to your response.

18. On or about June 4, Mr. Hood indicated to Mr. Emola that pursuant to Ascent's bid submissions the matter between the parties was being transferred to "corporate" for finalization and closing.

19. In reliance on Teleflex Medical's various representations and course of conduct and based upon the belief that Teleflex Medical would proceed to finalize the purchase of the guidewire business in good faith, Ascent expended substantial sums, including without limitation due diligence/travel expenditures, consultant fees, and architect and site visit costs associated with Ascent's planned facility in Oman.

**Teleflex Medical's Breach of the Agreement and Efforts to Frustrate Ascent's Performance Thereunder**

20. On June 5, 2007, John Sickler, Jr., the Senior Director of Corporate Management of Teleflex Medical's parent corporation, Teleflex Incorporated, indicated to Mr. Emola that he "had been asked by Dave Finney and Ciaran Hood to assist them in divesting [Teleflex Medical's] assets of the guidewire business."

21. On June 6, 2007, Mr. Sickler stated to Mr. Emola that, notwithstanding the explicit assurances made by Mr. Hood, certain of the guidewire assets were no longer available for purchase and certain additional items were available. Mr. Sickler invited

Mr. Emola to make a revised "offer" for those assets not already transferred by Teleflex Medical to third-parties.

22. On June 22, 2007, Mr. Sickler forwarded to Mr. Emola a draft "Asset Purchase Agreement." The draft agreement, and the cover letter it was sent under, referenced a June 29, 2007 "closing" for the transaction. The draft agreement referenced a purchase price of $475,000 to be payable, "by wire transfer of immediately available funds" as follows:

> (i) One Hundred Thousand United States Dollars (US$100,000) of the Purchase Price (the "Initial Payment") on the date of execution of this Agreement and (ii) Three Hundred Seventy Five Thousand United States Dollars (US$375,000) on the date that is the earlier of (A) Purchaser providing notice to Seller pursuant to Section 3.3 [of its intention to remove the Assets]; or (B) December 31, 2007.

23. Under the terms of this draft "Asset Purchase Agreement," Ascent was required to remove the guidewire assets from Teleflex Medical's Tecate facility on or before December 31, 2007, or risk forfeiture of any down payment.

24. On June 26, 2007, Mr. Sickler forwarded to Mr. Emola a supposed final list of guidewire assets.

25. On or before June 25, 2007, Mr. Emola delivered to Mr. Sickler a request for wire transfer instructions so that Ascent could ensure delivery of the initial payment on June 29, 2007. Teleflex Medical did not respond to this request.

26. United States banking institutions are unable to perform wire transfers without specific instructions regarding the destination account(s) of the relevant funds. Upon information and belief, Teleflex Medical was on notice of the fact.

27. United States banking institutions are also generally not able to process and distribute funds pursuant to wire transfer instructions received late in a given business day. Upon information and belief, this is commonly known in the United States business circles in which Teleflex Medical routinely operates, and was a fact actually known to Teleflex Medical at all times relevant here.

28. On June 28, 2007, the day prior to the "closing," Mr. Emola again asked Mr. Sickler to forward wire transfer instructions so that Ascent could promptly fund the initial payment. Again, Teleflex Medical did not respond to this simple request for the bank information necessary for Ascent to transfer funds to Teleflex Medical.

29. On June 29, 2007, at 9:44 a.m. EST, Mr. Sickler sent Mr. Emola a revised "Asset Purchase Agreement," and requested that Mr. Emola "Let [him] know if we are good to go."

30. On June 29, 2007, in an attempt to torpedo the parties' agreement, Mr. Sickler stated to Mr. Emola that the transaction could not continue under the terms previously negotiated. Rather, Ascent would be required to increase the initial payment from $100,000 to $225,000. Further, Ascent would have to agree to remove the Assets from Teleflex Medical's Tecate facility on or before July 31, 2007, not December 31, 2007, as had been previously agreed.

31. Notwithstanding Teleflex Medical's evident lack of good faith and failure to conform to the contours of the agreement previously reached, Ascent reluctantly agreed to these extremely onerous additional terms.

32. Though Ascent had repeatedly asked Teleflex Medical for the wire transfer instructions needed for Ascent to effectuate the parties' agreement, in a final

effort to derail the parties' agreement, Teleflex Medical refused to provide Ascent with these instructions until 4:11 p.m. EST.

33. Upon information and belief, Teleflex Medical was fully aware that its failure to provide the wire transfer instructions in a timely manner (and responsive to Ascent's repeated requests) would prohibit Ascent from having its bank deliver the initial payment to Teleflex Medical.

34. Teleflex Medical's delay in furnishing wire transfer instructions was an effort to frustrate Ascent's attempts to proceed in good faith to implement the terms of the parties' agreement for sale of the medical guidewire business.

35. Upon being told by Ascent at approximately 4:30 p.m. EST on June 29, 2007, that – given Teleflex Medical's dilatory conduct – Ascent's bank could not transfer the initial funds until the next business day, Mr. Sickler stated to Ascent that Teleflex Medical would not proceed with Ascent as he had found a "cleaner deal."

36. At approximately 6:00 p.m. on June 29, 2007, Lisa Thompson, Esq, in-house counsel for Teleflex Medical, stated:

> This letter is to confirm that the discussions concerning the sale of [the Assets] was discontinued by Teleflex at approximately 4:30 p.m. this afternoon. It was a condition of the transaction that funds be received by close of business today and we were informed by Dr. Gorth [sic] that a funding was not possible.

37. Teleflex Medical omitted any mention of the fact that the funding of the transaction on June 29, 2007, was prohibited only by Teleflex's knowing, bad faith conduct in refusing to provide Ascent with the previously requested wire transfer instructions.

38. Teleflex Medical also indicated in this letter – received only a few hours after it provided Ascent with the long-requested wire transfer instructions – that "Teleflex has completed a transaction for the sale of the guide wire assets."

39. By letter dated July 3, 2007, Ascent, acting through its attorneys, protested vehemently to Teleflex Medical's failure to adhere to the terms of the parties' prior agreements for sale of the Assets and/or for proceeding to negotiate in good faith to finalize such an agreement. In this letter, Ascent stated that it remained ready, willing and able to proceed with the purchase of Teleflex Medical's guidewire business and demanded that Teleflex Medical proceed to finalize the parties' agreement.

## As and For a First Cause of Action
### (Breach of Contract)

40. Ascent hereby incorporated paragraphs 1 through 39 as if set forth fully herein.

41. By virtue of the parties' representations and actions, Teleflex Medical and Ascent entered into an enforceable contract for the purchase of Teleflex Medical's medical guidewire business by Ascent. Although certain terms of the contract remained subject to negotiation in good faith and at a later time, the general contours of the parties' agreement are not in dispute.

42. Ascent performed all conditions, covenants and promises required to be performed on its part in accordance with the terms of the parties' agreement.

43. Teleflex Medical has breached the parties' agreement by, *inter alia*, (i) substantially revising the terms of the parties' agreement for purchase of the guidewire business in an effort to preclude the parties from proceeding to implement the terms of the agreement; (ii) withholding wire transfer instructions, despite repeated, timely

requests for them from Ascent, in an effort to frustrate Ascent's ability to implement the agreement's terms; (iii) abruptly and without justification purporting to terminate the parties' discussion, notwithstanding the fact that any delay in implementation of the agreement's terms was due exclusively to the conduct of Teleflex Medical and was not in any manner attributable to Ascent; and (iv) entering into an agreement with an unknown third-party for sale of its medical guidewire business.

44.    As a direct, proximate and foreseeable result of Teleflex Medical's breaches of the parties' agreement, Ascent has suffered and will continue to suffer actual damages subject to proof at trial.

## As and For a Second Cause of Action
### (Breach of Covenant of Good Faith and Fair Dealing)

45.    Ascent hereby incorporated paragraphs 1 through 44 as if set forth fully herein.

46.    By virtue of the parties' representations and actions, Teleflex Medical had a duty of good faith and fair dealing.

47.    Teleflex Medical breached its duty of good faith and fair dealing by, *inter alia*, (i) substantially revising the terms of the parties' agreement for purchase of the guidewire business in an effort to preclude the parties from proceeding to implement the terms of the agreement; (ii) withholding wire transfer instructions, despite repeated, timely requests for them from Ascent, in an effort to frustrate Ascent's ability to implement the agreement's terms; (iii) abruptly and without justification purporting to terminate the parties' discussion, notwithstanding the fact that any delay in implementation of the agreement's terms was due exclusively to the conduct of Teleflex

Medical and was not in any manner attributable to Ascent; and (iv) entering into an agreement with an unknown third-party for sale of its medical guidewire business.

### As and For a Third Cause of Action
### (Promissory Estoppel)

48. Ascent hereby incorporated paragraphs 1 through 48 as if set forth fully herein.

49. Teleflex Medical made Ascent a promise that it would proceed in good faith to complete the sale of its medical guidewire business to Ascent.

50. Teleflex Medical reasonably expected, or should have reasonably expected, that Ascent would rely upon that promise.

51. Ascent in fact relied to its detriment upon the promise of Teleflex Medical to proceed in good faith and pursuant to the terms agreed upon.

52. As a direct and proximate result of its detrimental reliance upon Teleflex Medical's promise, Ascent has incurred damages of a definite and substantial nature.

### Irreparable Harm

53. Ascent has invested significant amounts of money and personnel time in developing a medical guide wire manufacturing business in Oman.

54. Certain of the guide wire assets covered by the relevant transaction may be available "new" on the open market. However, as Ascent repeatedly indicated to Teleflex Medical, including it its bid letter of May 1, 2007, being able to purchase the assets used, as a wholesale set, and, most importantly, accompanied by the "detailed process instructions as well as the support necessary to maintaining the in-house Teleflex accounts" presented a unique business opportunity for Ascent.

55. Upon information and belief, Teleflex Medical is in the process of implementing an agreement that will effectuate the transfer of Teleflex Medical's fully integrated guidewire assets and operation to another party that may well be an established participant in the guidewire market.

56. If Teleflex Medical is permitted to effectuate this transfer and/or does not consummate the transfer of the business to Ascent, Ascent will be irreparably harmed. Given the unique nature of the transaction at issue – the wholesale purchase of medical guidewire manufacturing assets and fully integrated operation – Ascent has no adequate remedy at law.

57. Teleflex Medical will not be injured if required to proceed with the sale of the guidewire business to Ascent.

58. The public interest will be served if the requested injunctive relief issues.

### Jury Demand

Pursuant to Federal Rule of Civil Procedure 38(b), Ascent hereby demands a trial by jury of all issues so triable.

**WHEREFORE**, Ascent prays for judgment against Teleflex Medical as follows:

1. Preliminary and permanent injunctions restraining Teleflex Medical from proceeding with any proposed sale of its medical guidewire business to a third-party and commanding Teleflex Medical to proceed with sale of its medical guidewire business to Ascent;

2. In the alternative, for damages in an amount to be proved at trial but not less than $8,000,000;

3. For the costs herein incurred by Ascent herein; and

4. For such other and further relief as the Court may deem proper.

Dated: July 10, 2007

                    MORRIS, DOWNING & SHERRED, LLP

By: _____
         David L. Johnson (DJ-7079)
         Douglas C. Gray (DG-3907)

One Main Street P.O. Box 67
Newton, New Jersey 07860
Ph. 973-383-2700
Fax 973-393-3510
Attorneys for Plaintiff Ascent Medical Technology Fund II, LP